IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO UNITED INDUSTRIES, LTD., GEORGE LOERA, and NICK MASSARELLA, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 05 C 5011 ) |
| CITY OF CHICAGO, CITY OF CHICAGO DEPARTMENT OF PROCUREMENT SERVICES, CITY OF CHICAGO DEPARTMENT OF TRANSPORTATION, and LOUIS LANGONE, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**CORRECTED**
**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The City of Chicago, the City's Department of Procurement Services, its Department of Transportation, and Louis Langone, the Director of Administration of the Department of Transportation have moved to dismiss the amended complaint of Chicago United Industries, Ltd. (CUI), and its owners George Loera and Nick Massarella. For the reasons stated below, the Court grants the defendants' motion in part and denies it in part.

**Facts**

The plaintiffs' claims arise from the City's debarment of CUI, Loera, and Massarella in August 2005 from doing business with the City of Chicago. Prior to the debarment, CUI had been awarded contracts to provide stop signs, traffic control signals, fire extinguisher boxes, emergency telecommunications equipment, and other items. Allegedly as a result of the debarment, the City terminated some forty contracts that CUI had with the City, whose value,

CUI alleges, was around $12 million. The debarment also had the effect, plaintiffs contend, of preventing them from doing business with others that had City contracts. The plaintiffs allege that the debarment and termination was done in violation of their rights to due process – among other things, they argue, Loera and Massarella were never notified that the City was considering debarring them personally – and that the procedure used by the City was a sham. The plaintiffs also allege that during the debarment proceedings, the City and its representatives made false and defamatory statements about CUI, Loera, and Massarella to the press, City departments, and companies with which CUI does business.

The plaintiffs filed this suit shortly after the debarment took place. They obtained a temporary restraining order from the judge of this Court to whom the case was then assigned. The order was reversed on appeal after the Court of Appeals concluded that it amounted to an appealable preliminary injunction due to its duration, and then found that the claim for injunctive relief had been rendered moot by the City's later reinstatement of the cancelled contracts and rescission of the debarment order and the amendment of its debarment rules to provide for additional process in advance of debarment. *See Chicago United Inds., Ltd. v. City of Chicago,* 445 F.3d 940 (7th Cir. 2006). The court vacated the injunction but remanded the case for consideration of any claims for damages.

CUI and the other plaintiffs filed the amended complaint following remand. They allege that the City has continued to take action adverse to CUI, and has retaliated against CUI for filing suit, by threatening to reinstate debarment proceedings, cancelling contracts, refusing to accept CUI as the low bidder on various contracts, failing to advise City departments and outside vendors that CUI is eligible to do business with the City, and making defamatory statements

2

about the CUI, Loera, and Massarella with the purpose of ruining their reputations. Count 1 of the complaint alleges a violation of plaintiffs' procedural due process rights; Count 2 alleges a violation of their substantive due process rights; Count 3 alleges a claim of retaliation for plaintiffs' exercise of their due process rights; Count 4 seeks an injunction from further debarment proceedings; Count 5 is a claim of defamation under state law; and Count 6 appears to be another due process claim encompassing all of plaintiffs' allegations.

**1.     Claims against City Departments; official capacity claim against Langone**

The Court can deal quickly with certain of the arguments made in support of dismissal. First, the Court agrees with defendants that the two Departments that plaintiffs have sued are non-suable entities and should be dismissed; plaintiffs present no contrary argument. Second, the Court agrees with defendants that any "official capacity" claims against Langone are appropriately dismissed, as those amount to claims against the City. The Court notes, however, that this does not eliminate the possibility of an individual-capacity claim against Langone or other City officials who may have been personally involved in the conduct alleged by plaintiffs.

**2.     Procedural due process claims**

To maintain a claim for violation of procedural due process rights, a plaintiff must allege that it was deprived of a protected interest in property or liberty without due process of law. *See, e.g., American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999).

**a.     Claim for deprivation of property interest relating to existing contracts**

CUI contends, and the City agrees, that CUI had a property interest in its entitlement to payment under existing contracts that were cancelled as a result of the debarment. The Supreme Court has held, however, that when a government contractor is able to file a breach of contract

3

case in state court, the termination of its contract does not constitute deprivation of property without due process. *Lujan v. G&G Fire Sprinklers, Inc.,* 532 U.S. 189 (2001). In *Lujan,* the Court distinguished cases of this type from those in which a holder of a property interest is deprived of ownership of property it already has, such as real or personal property or a job. *Id.* at 196. In contrast to holders of those types of property interests, the Court said, a contractor whose contract is terminated has been deprived of a right to payment; that right, the Court concluded, "can be fully protected by an ordinary breach of contract suit." *Id.* For this reason, CUI cannot maintain a procedural due process claim based on its loss of existing contracts.

**b.     Claim for deprivation of property interest in future contracts**

The debarment of CUI, Loera, and Massarella also had the effect of denying them the ability to obtain future contracts with the City. The City contends that this does not constitute a property interest protected by the Fourteenth Amendment, *see* Def. Mem. at 2-3; plaintiffs do not contest the point in their response. The City is correct. There is no right under Illinois law to a future government contract that is sufficient to give rise to a property interest protected by the Due Process Clause. *See, e.g., Kim Constr. Co. v. Bd. of Trustees of Village of Mundelein,* 14 F.3d 1243, 1246-47 (7th Cir. 1994).

**c.     Claim for deprivation of liberty interest**

CUI, Loera, and Massarella contend that their debarment and related events deprived each of them of a liberty interest without due process of law. To state a claim of this type, a plaintiff must allege that a government official made a stigmatizing statement about the plaintiff and, in connection with the statement, altered the plaintiff's legal status in a tangible way or deprived the plaintiff of a right the state previously recognized – what is sometimes called a

4

"stigma-plus" claim. *See, e.g., Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 617 (7th Cir. 2002).

The City argues that CUI, as a corporation, does not possess a liberty interest in its reputation that is protected by the Due Process Clause. It relies on two Seventh Circuit cases that it argues stand for this proposition. In *Nat'l Paint & Coatings Ass'n v. City of Chicago,* 45 F.3d 1124 (7th Cir. 1995), corporate entities challenged a Chicago ordinance banning the sale of spray paint. The court first rejected their claim under the Equal Protection Clause, holding that the City had a rational basis for enacting the ordinance. *Id.* at 1127-29. It then addressed the plaintiffs' claim that "the ordinance is a violation of substantive due process," a claim the district court had upheld. The court determined that the doctrine of substantive due process is "derived from the many constitutional rules that protect personal liberty from unjustified intrusions" and that "[o]nly laws that affect fundamental rights come within the purview of this doctrine." *Id.* at 1129. The only interests the plaintiff corporations pointed to that were affected by the ordinance were their licenses to do business. The court said that "these are property, not 'fundamental rights,'" and it went on to say that "[c]orporations do not have fundamental rights; they do not have liberty interests, period." *Id.*

About a month after *Nat'l Paint,* the Seventh Circuit decided *Mid-American Waste Systems, Inc. v. City of Gary,* 49 F.3d 286 (7th Cir. 1995), which concerned a municipality's limits on the amount of waste the plaintiff could deposit at a landfill it had leased. The court rejected the plaintiff's procedural due process claim based on its assertion of a property interest in its leasehold rights. *Id.* at 289-90. It then went on to consider the plaintiff's claim as alleging a violation of substantive due process. As in *Nat'l Paint,* the court indicated that "[e]ven when

5

used to protect personal liberties, substantive due process is limited to the domain of fundamental rights," and it determined that the plaintiff lacked a "fundamental right" regarding the depositing of waste in the landfill. *Id.* at 291. In the course of its discussion, the court quoted from *Nat'l Paint* for the proposition that "'[c]orporations do not have fundamental rights; they do not have liberty interests, period.'" *Id.* (quoting *Nat'l Paint,* 45 F.3d at 1129).

It is true, as CUI points out, that neither *Nat'l Paint* nor *Mid-American Waste Systems* involved claims of procedural due process violations or, more specifically, the alleged stigmatizing of a corporation in connection with its debarment from government contracts. At least two Circuits have allowed such claims to proceed. *See Trifax Corp. v. District of Columbia,* 314 F.3d 641, 643-44 (D.C. Cir. 2003); *Transco Security, Inc. of Ohio v. Freeman,* 639 F.2d 318, 321 (6th Cir. 1981). But even if the Seventh Circuit's statement that corporations lack liberty interests did not concern a procedural due process claim, it did concern a claim under the Due Process Clause, and even if it was *dictum,* it was rather definitive *dictum.*

In addition, the Supreme Court has squarely held, albeit over eighty years ago, that the protection of "liberty" in the Due Process Clause does not apply to corporations. *See Pierce v. Soc'y of Sisters,* 268 U.S. 510, 535 (1925). Though the Supreme Court has not revisited the issue more recently, in view of *Pierce* and the Seventh Circuit's statement in *Nat'l Paint,* this Court does not believe it is open to a district court in this Circuit to conclude that a corporation holds a liberty interest in its reputation protected by the Due Process Clause. In this regard, the Court finds itself in respectful disagreement with *Coleman & Williams, Ltd. v. Wisc. Dep't of Workforce Development,* 401 F. Supp. 2d 938, 943-45 (E.D. Wis. 2005), cited by CUI on this point.

The Court's analysis is different with regard to the procedural due process claim advanced by Loera and Massarella. First, Loera and Massarella have sufficiently alleged deprivation of a protectible liberty interest; they allege that City officials, in connection with the process of debarring them from doing business with the City, made defamatory statements about them. Second, Loera and Massarella have sufficiently alleged a denial of due process. Specifically, they have alleged that they were individually debarred as part of the debarment proceedings against CUI without having been given sufficient notice that they were personally subject to debarment.

The City argues that Loera and Massarella were on constructive notice that they personally might be subject to debarment. Assuming this to be true, and assuming this would constitute adequate notice under the Due Process Clause (questions the Court need not decide at this stage of the case), Loera and Massarella's allegation that the debarment procedure was a sham with a foreordained result is sufficient to allow their procedural due process claim to proceed. *See, e.g., Ryan v. Ill. Dep't of Children & Family Svcs.,* 185 F.3d 751, 762 (7th Cir. 1999) ("A plaintiff who can introduce evidence that the decision has already been made and any hearing would be a sham is entitled to go forward with a procedural due process claim."); *Levenstein v. Salafsky,* 164 F.3d 345, 351 (7th Cir. 1998) (due process requires that a hearing be a real one, not a sham or pretense). The Court acknowledges the City's argument that Loera and Massarella would have been able to raise the "sham" argument following debarment in state court by way of a common law writ of *certiorari*; a later decision in the *Levenstein* case suggests that this type of opportunity might be sufficient to make the entirety of the process provided satisfy constitutional requirements, even if the initial process provided by the state did not. *See*

7

*Levenstein v. Salafsky,* 414 F.3d 767, 773 (7th Cir. 2005). But the later decision in *Levenstein* came after summary judgment on some claims and a bench trial on others. At the current, pleading stage of the litigation, it is inappropriate to adjudicate against the plaintiffs the sufficiency of the process that was *actually* provided as opposed to the process that was *supposed to be* provided.

The City also argues that Loera and Massarella cannot maintain a claim against the City – in contrast with, perhaps, individual-capacity claims against the official or officials claimed to have violated their due process rights. A municipality may be held liable under § 1983 for the unconstitutional actions of its employees only if the plaintiff can demonstrate that the alleged constitutional deprivation was caused by a policy or custom of the municipality. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694 (1978). Liability may exist under *Monell* if an express policy of the municipality caused the constitutional deprivation; the deprivation was caused by a widespread practice that is so permanent and well settled that it constitutes a policy with the force of law; or the plaintiff's injury was caused by a municipal official with final policymaking authority. *See, e.g., McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995).

The City argues that Loera and Massarella's claims constitute "boilerplate" that is insufficient to satisfy the requirements of *Monell*. This argument is without merit. The Seventh Circuit has recently made it abundantly clear – in a case in which the City of Chicago was a defendant, no less – that conclusory allegations of a municipal policy are sufficient; it squarely rejected the view "that the facts included in the complaint must lead to the legal conclusions drawn." *McCormick v. City of Chicago,* 230 F.3d 319, 324-25 (7th Cir. 2000). Under the Federal Rules' notice-pleading regime, "'[a] plaintiff does not have to plead evidence. . . . [A]

complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing.'" *Id.* at 325 (quoting *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 626-27 (7th Cir. 1999)). Loera and Massarella are entitled to an opportunity to prove their "policy" claim against the City, whether based on a contention that the City has a widespread practice of conducting sham debarment hearings, or on a contention that the sham hearing in this case was done at the direction of an official with final policymaking authority, or both.

For these reasons, the Court declines to dismiss Loera and Massarella's procedural due process claims against the City to the extent they are predicated on deprivation of a liberty interest.

**3.    Substantive due process claims**

In Count 2, plaintiffs allege that the City acted arbitrarily and capriciously and that its actions were not rationally related to any legitimate government interest.

The due process clause is primarily aimed at the procedures by which a government deprives a person of property or liberty; it provides only limited protection against the substance of the government's actions, at least where fundamental liberties are not involved. *See, e.g., Lee v. City of Chicago,* 330 F.3d 456, 467 (7th Cir. 2003); *see generally, Washington v. Glucksberg,* 521 U.S. 702 (1997)). The doctrine of substantive due process "is not 'a blanket protection against unjustifiable interferences with property.'" *Schroeder v. City of Chicago,* 927 F.2d 957, 961 (7th Cir. 1991). Unless the particular governmental action encroaches on a fundamental right, substantive due process requires only that it be neither arbitrary nor irrational. *Lee,* 330 F.3d at 467.

Plaintiffs have alleged in Count 2 that the City's actions were, in fact, arbitrary and irrational and unrelated to a legitimate governmental interest. But this does not save CUI's substantive due process claim. First of all, *Nat'l Paint* and *Mid-American Waste Systems,* discussed earlier, are dispositive of CUI's claims that it enjoyed a liberty interest of which it was deprived by the City. Second, the Seventh Circuit has made it clear that if only the deprivation of a property interest is involved, a plaintiff must show "either the inadequacy of state law remedies or an independent constitutional violation" before a court may engage in rational-basis review. *Id.* (citing *Doherty v. City of Chicago,* 75 F.3d 318, 323-26 (7th Cir. 1996) and *Wudtke v. Davel,* 128 F.3d 1057, 1062 (7th Cir. 1997)). The City argues that CUI's opportunity to pursue a state law breach of contract action for its existing contracts and to seek review by way of common law *certiorari* of the debarment action as to future contracts are adequate state law remedies. CUI makes no attempt to argue otherwise, *see* Pl. Mem. at 19-21 (discussion of substantive due process claim), and must be deemed to have conceded the point. CUI's substantive due process claim is dismissed.

Loera and Massarella's substantive due process claim, by contrast, survives. Unlike CUI, Loera and Massarella possess liberty interests of which they claim to have been deprived by the City. Because their claims are not based exclusively on property interests, they are not required to show the inadequacy of state law remedies.

**4.     Retaliation claims**

Plaintiffs allege that the defendants took various actions against them to retaliate for their exercise of their constitutional rights, specifically, in retaliation for their filing of this suit and their success – for a time, at least – in securing preliminary injunctive relief. Though plaintiffs

10

refer to this as retaliation for exercising their right to due process of law, the Court thinks the better description is retaliation for the exercise of their First Amendment right to petition the government for redress of grievances.

The City argues that the filing of the lawsuit did not involve First Amendment - protected activity because the lawsuit involved a private grievance and not a matter of public concern. In this regard, the City relies on *Carreon v. Ill. Dep't of Human Servs.,* 395 F.3d 786 (7th Cir. 2005), in which employees of a state mental health facility alleged that they were retaliated against for exercising their free speech rights. One of the plaintiffs contended that he was penalized in retaliation for, among other things, an earlier employment discrimination lawsuit he had filed. The court rejected this argument in part because "while the filing of a lawsuit may amount to protected speech, a 'public employee has no First Amendment claim unless the lawsuit involves a matter of public concern.'" *Id.* at 793 (quoting *Zorzi v. County of Putnam,* 30 F.3d 885, 896 (7th Cir. 1994)).

The City has cited no Seventh Circuit cases, however, applying the "matter of public concern" test to claims involving persons other than government employees who contend the government retaliated against them for exercising their First Amendment rights. The Court has conducted its own research on the point and agrees with the First Circuit, which has specifically addressed this issue and has declined to apply the "public concern" requirement in cases like this one. In *Campagna v. Massachusetts Dep't of Environmental Protection,* 334 F.3d 150 (1st Cir. 2003), the court considered a claim by an employee of a government agency who was turned down when he applied for a higher position and filed suit to challenge that action. He remained employed by the agency and also conducted a private business in which he monitored septic

11

systems. In that capacity, he was cited by the same agency for violating state regulations in connection with a particular system he had monitored. The plaintiff alleged this was done in retaliation for his earlier lawsuit. The district court dismissed the case because the prior lawsuit involved a personal grievance, not a matter of public concern. The First Circuit reversed. It noted that the "public concern" doctrine had been applied to First Amendment retaliation claims by public employees as a way to balance the citizen-employee's First Amendment rights against the interest of a government employer in maintaining order and efficiency in the workplace. *Id.* (citing *Connick v. Myers,* 461 U.S. at 138, 140 (1983) and *Pickering v. Bd. of Educ. of Twp. Sch. Dist. 205,* 391 U.S. 563, 568 (1968)). Because the underlying reason for imposing the restriction did not exist in the case of an outside government contractor, the court concluded, the "public concern" requirement should not apply. *Id.*

Though there are no Seventh Circuit cases directly addressing this issue, there is reason to believe that if faced with the question, the court would not apply the "public concern" limitation outside the public employee context. Specifically, the Seventh Circuit has not imposed that requirement in addressing claims by prison inmates who allege they have been retaliated against for exercising their First Amendment right to petition the government for redress of grievances. *See, e.g., Walker v. Thompson,* 288 F.3d 1005 (7th Cir. 2002); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996).

The City also argues that the plaintiffs cannot maintain a retaliation claim under *Monell*. In addition to the arguments made earlier that the Court has already rejected, the City also relies on a consent decree in the case of *Alliance to End Repression v. City of Chicago,* Case Nos. 74 C 3268 & 75 C 3295 (N.D. Ill.), barring the City from taking investigating, prosecuting, disrupting,

12

interfering with, or harassing any person to punish or retaliate against that person for engaging in First Amendment-protected conduct. It is not entirely clear, however, that the particular actions of the plaintiffs for which they claim to have been retaliated are the type of actions covered by the *Alliance to End Repression* consent decree; even if they are covered, plaintiffs have alleged a custom or practice by the City sufficient to survive a motion to dismiss, even if there is a formal policy that might appear to prevent the type of retaliation they allege.

For these reasons, the Court declines to dismiss the plaintiffs' retaliation claims.

**5.    State law claims**

The plaintiffs have sued the City for defamation, based on various press releases issued by the City's Department of Law and statements by City officials incorporated within those releases. The City has moved to dismiss, relying on a provision of the Illinois Local Governmental and Governmental Employees Tort Immunity Act providing that

> A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 ILCS 10/2-107. This provision grants municipalities absolute immunity from suit for defamation, even in cases involving intentional misconduct. *See Horowitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 617 (7th Cir. 2001); *Garvey v. County of Lake,* 160 Ill. App. 3d 761, 754, 513 N.E.2d 1127, 1129-30 (1987). Plaintiffs' only contrary argument is that dismissal is improper because it is possible that the statements were made outside the scope of the official duties of the City personnel involved. Even if so, that is of no consequence. There is nothing in section 2-107 that limits its applicability to statements made within the scope of

employment, and plaintiffs cite no case suggesting that such a requirement exists.[1] Plaintiffs' defamation claims are dismissed.

**6.      Injunctive relief claim**

In Count 4, plaintiffs seek an injunction seeking to bar the City from enforcing the debarment against them or reinstituting new debarment proceedings on the same grounds. The first part of this count is the exact claim the Seventh Circuit said was rendered moot by the City's rescission of the debarment order and its reinstatement of the cancelled contracts. The City argues that the request to enjoin future debarment is deficient because legal remedies, specifically a suit for damages, will be adequate for any such future deprivation. Though it is likely that the City is right about this, it is premature to decide as a factual matter whether plaintiffs will be able to meet the requirements for obtaining an injunction. The Court therefore declines to dismiss their injunctive relief claim.

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss in part and denies it in part. Plaintiffs' claims against the City's Department of Procurement Services and Department of Transportation and their official capacity claim against Louis Langone are dismissed; CUI's procedural and substantive due process claims are dismissed; and the plaintiffs' state law claims are dismissed. Defendants' motion to dismiss is otherwise denied. Defendants are directed to answer the remaining claims by no later than December 22, 2006.

The case is set for a status hearing on December 20, 2006 at 9:30 a.m. for the purpose of

---

[1] In any event, plaintiffs are asking to hold the City liable for the alleged defamation by the employees; they have not sued the employees as individuals.

setting a discovery schedule. The parties are directed to confer prior to that date so that they can propose an appropriate schedule to the Court.

                                                                                                   _____
                                                                                                    MATTHEW F. KENNELLY
                                                                                                     United States District Judge

Date: December 20, 2006