IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO UNITED INDUSTRIES, LTD., ) | | |
| GEORGE LOERA, and NICK MASSARELLA, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | Case No. 05 C 5011 | |
| ) | | |
| CITY OF CHICAGO, MARY DEMPSEY, ) | | |
| and LOUIS LANGONE, ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The City of Chicago; Mary Dempsey, the City's Interim Chief Procurement Officer; and Louis Langone, the Director of Administration of the City's Department of Transportation, have moved to dismiss the second amended complaint of Chicago United Industries, Ltd. (CUI) and its owners George Loera and Nick Massarella.

For the reasons stated below, the Court grants the defendants' motion in part and denies it in part.

### Background

The plaintiffs' claims arise from the City's debarment of CUI, Loera, and Massarella in August 2005 from doing business with the City of Chicago. Prior to the debarment, CUI had been awarded contracts to provide stop signs, traffic control signals, fire extinguisher boxes, emergency telecommunications equipment, and other items. Allegedly as a result of the debarment, the City terminated or stopped performing on over forty contracts that CUI had with

the City, whose value, CUI alleges, was around $12 million. The debarment also had the effect, plaintiffs contend, of preventing them from doing business with others that had City contracts. The plaintiffs allege that the debarment and termination violated Loera and Massarella's rights to due process, as they Loera and Massarella were never notified that the City was considering debarring them personally, and the procedure the City used allegedly was a sham. The plaintiffs also allege that during the debarment proceedings, the City and its representatives made false and defamatory statements about CUI, Loera, and Massarella to the press, City departments, and companies with which CUI does business. They also allege that the defendants later retaliated against them for filing suit to challenge the debarment.

**1.    The original complaint**

The plaintiffs filed this suit shortly after the debarment took place. They obtained a temporary restraining order from the judge of this Court to whom the case was then assigned. The order was reversed on appeal after the Court of Appeals concluded that it amounted to an appealable preliminary injunction due to its duration, and then found that the claim for injunctive relief had been rendered moot by the City's later reinstatement of the cancelled contracts and rescission of the debarment order and its amendment of debarment rules to provide for additional process in advance of debarment. *See Chicago United Inds., Ltd. v. City of Chicago,* 445 F.3d 940 (7th Cir. 2006). The court vacated the injunction but remanded the case for consideration of any claims for damages.

**2.    The first amended complaint**

CUI and the other plaintiffs filed an amended complaint following remand. They alleged that the City had retaliated against CUI for filing suit by threatening to reinstate debarment

proceedings, cancelling contracts, refusing to accept CUI as the low bidder on various contracts, failing to advise City departments and outside vendors that CUI was again eligible to do business with the City, and making defamatory statements about CUI, Loera, and Massarella. They asserted claims for damages on behalf of all three plaintiffs for violation of their procedural and substantive due process rights and for retaliation for exercising their First Amendment rights (Counts 1, 2, 3, and 6); a claim for an injunction against further debarment proceedings (Count 4); and a state law defamation claim (Count 5). On December 7, 2006, the Court dismissed CUI's due process claims and all three plaintiffs' state law claims. The Court declined to dismiss the due process claims of Loera and Massarella and the First Amendment retaliation claims of the three plaintiffs.

**3.     The second amended complaint**

Following the December 2006 ruling, plaintiffs filed a second amended complaint adding Dempsey as a defendant. The Court will describe the second amended complaint's allegations in some detail.

Plaintiffs allege that CUI, a minority business enterprise and a supplier of goods, has been doing business with the City for approximately twenty years. They allege that on an unspecified date, CUI was awarded a contract by the City with a total value of $1,530,000 to provide over 300,000 "sign blanks" to the City's Department of Transportation (DOT). CUI delivered the required items in January 2005.

Shortly thereafter, Louis Langone, DOT's Director of Administration, claimed that CUI had shorted the City by 222 blanks, saying he had counted the blanks by hand. Massarella allegedly visited the DOT's sign shop and saw that the blanks were still shrink-wrapped; he

3

believed that Langone could not possibly have counted the blanks and had made a false allegation against CUI as an excuse to avoid or delay payment. CUI then provided the City with documentation that the requested number of sign blanks had been delivered, and it requested payment. CUI was then told to deal only with the City's Department of Procurement Services (DPS) and its attorneys. According to plaintiffs, CUI was eventually paid for all but 222 sign blanks.

On March 31, 2005, plaintiffs allege, the City issued a notice of intent to debar CUI. In that notice, the City alleged that CUI had submitted a false shipping ticket to DOT regarding the delivery of the sign blanks and had tried to collect $2,400 that it knew was not owed. According to plaintiffs, the notice did not state or suggest that the City was considering debarring Loera or Massarella personally. Plaintiffs also allege that at the time the City issued the notice, it also issued press releases falsely claiming that CUI was dishonest and that it had committed a fraud on the City.

Plaintiffs allege that on April 29, 2005, CUI submitted a written response to the notice of intent to debar, including a sworn affidavit from the manufacturer of the sign blanks stating that any shortage was the result of his own error and that CUI and its representatives were unaware of the error.

The debarment proceedings remained pending without action by the City for approximately four months. During this period, plaintiffs allege, DPS directed other City departments not to honor their contracts with CUI or do business with CUI and advised other City contractors to do the same, even though this allegedly violated the City's debarment procedures. As a result, plaintiffs allege, manufacturers and suppliers under contract with CUI

4

terminated their relationships with the company. Plaintiffs say that they repeatedly protested these actions by the City and requested meetings with DPS and Dempsey (the City's Interim Chief Procurement Officer), as well as a hearing, but were ignored.

Plaintiffs allege that on August 24, 2005, the City debarred all three plaintiffs based on findings of fact that were based on false evidence supplied by Langone and summaries of witness interviews that falsely reported the statements of the witnesses. The debarment occurred, plaintiffs contend, without any opportunity to rebut the evidence against them and without findings by an impartial finder of fact. As a result of the debarment, the City's business with CUI was terminated, and all payments due to CUI were placed on hold.

Plaintiffs also allege that on March 17, 2005, the City gave CUI a notice of intent to decertify it as a minority business enterprise on the ground that it was ineligible for such a certification. The notice made no reference to the allegations of dishonesty or the sign blank contract. In April 2005, CUI made a written response to the notice of intent to decertify. On August 24, 2005, CUI received notice of a hearing before DPS, to occur seven days hence. The notice did not mention the original notice of intent to decertify but rather referred only to the debarment of CUI. CUI says that upon inquiry, it was advised that the decision on the decertification would be made by the same person or persons who had conducted the debarment proceedings.

CUI then filed this lawsuit and moved for a temporary restraining order. As noted earlier, the judge to whom the case was then assigned issued a temporary restraining order in which he enjoined the City from enforcing the debarment of the plaintiffs, canceling any existing contracts with CUI, and conducting any further proceedings on the decertification. The TRO

was later extended and was modified to prevent the City from doing an end run around CUI's existing contracts by procuring from other entities the materials covered by those contracts.

Plaintiffs allege that after the filing of this suit and the entry of the temporary restraining order, the City retaliated against plaintiffs by threatening to institute new debarment proceedings; failing to inform City departments and vendors that CUI was again eligible to do business with the City; canceling existing contracts; refusing to award other contracts to CUI even though it was the low bidder; and taking various other actions. *See* 2d Am. Compl. p. 6 & ¶¶ 93 & 126. As a result, plaintiffs allege, certain vendors declined to do business with plaintiffs. CUI also alleges that in further retaliation, the City refused to act on CUI's request for recertification as a minority business enterprise and charged Massarella with violating a City ordinance imposing civil penalties for making false claims (a charge that the City later dropped).

The second amended complaint includes five claims. Counts 1 and 2 are claims by Loera and Massarella for violation of their procedural and substantive due process rights; Count 3 is a claim by all plaintiffs that defendants retaliated against them for exercising their constitutional rights; Count 4 is a claim for injunctive relief based on plaintiffs' constitutional claims; and Count 5 is a state law claim by CUI against the City for breach of some forty-six contracts. All three defendants have moved to dismiss Counts 3 and 5, and Dempsey and Massarella have moved to dismiss all of the claims against them on various grounds.

**Discussion**

**1.     First Amendment retaliation claim**

Defendants have moved to dismiss Count 3, in which plaintiffs claim that defendants retaliated against them for filing this lawsuit. The Court addressed this claim in its ruling on

6

defendants' motion to dismiss the first amended complaint. As the Court stated in that ruling, though plaintiffs characterize this as a claim of retaliation for exercising their right to due process, the better description is retaliation for exercising their First Amendment right to petition the government for redress of grievances.

In their motion to dismiss the plaintiffs' first amended complaint, defendants argued that plaintiffs' filing of the lawsuit did not involve activity protected by the First Amendment, because the suit concerned a private grievance, not a matter of public concern. *See generally Connick v. Myers,* 461 U.S. 138 (1983); *Pickering v. Bd. of Educ. of Twp. Sch. Dist. 205,* 391 U.S. 563 (1968). The Court concluded that the "public concern" test, originally developed in the context of government employee free speech rights, does not apply in the context of a claim based not on the First Amendment's Free Speech Clause, but on the Petition Clause. In their motion to dismiss the second amended complaint, defendants challenge that conclusion.

There is, indeed, reason to question whether the Court got it right. The Court relied, in part, on a First Circuit case declining to impose the "public concern" requirement to a claim by a government contractor that he had been retaliated against for filing a lawsuit challenging adverse action taken against him when he had been a governmental employee. *See Campagna v. Massachusetts Dep't of Environmental Protection,* 334 F.3d 150 (1st Cir. 2003). The First Circuit declined to dismiss the case despite the defendant's argument that the prior lawsuit had involved a private grievance, not a matter of public concern. It noted that the "public concern" doctrine had been applied to First Amendment retaliation claims by public employees as a way to balance the citizen-employee's First Amendment rights against the interest of a government employer in maintaining order and efficiency in the workplace. *Id.* at 154. Because the

underlying reason for imposing the restriction did not exist in the case of an outside government contractor, the court concluded, the "public concern" requirement should not apply. *Id.* at 155.

In renewing their argument, defendants point out, and the Court agrees, that the "public concern" test applies to retaliation-for-speech claims by outside government contractors, just as it applies to such claims by government employees. *See Board of County Comm'rs, Waubaunsee Cty. v. Umbehr,* 518 U.S. 668, 685 (1996). That principle was well known to the Court at the time of its earlier ruling. By itself, however, *Umbehr* has no impact on claims of retaliation for exercising one's right to petition for redress of grievances.

Defendants also note, however, that the Seventh Circuit has stated – albeit, we note, in *dictum* – that there is "no rational basis for discriminating (and thus creating a hierarchy) among the rights of speech, petition and association in applying *Connick* to First Amendment claims." *Griffin v. Thomas,* 929 F.2d 1210, 1213-14 (7th Cir. 1991) (claim for retaliation for exercise of right of association). In this regard, the Seventh Circuit relied on the Supreme Court's decision in *McDonald v. Smith,* 472 U.S. 479 (1985), in which the Court rejected the argument that the Petition Clause provides absolute immunity from damages for libel, saying that "there is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other first amendment expressions." *Id.* at 485.

Though neither *McDonald* nor *Griffin* directly addresses the issue in this case, they are sufficient to give the Court pause. For this reason, the Court withdraws its earlier determination that the "public concern" test does not apply to plaintiffs' claim that they were retaliated against for exercising their First Amendment right to petition for redress for filing this lawsuit. That does not mean the Court is ruling the opposite way, but only that the earlier discussion was

8

deficient and that the matter need not be determined definitively at this time.

Application of the public concern test does not, however, provide a proper basis to dismiss Count 3 for failure to state a claim. The question remains whether plaintiffs' original lawsuit involved a matter of public concern. In this regard, the Court must construe the complaint liberally and may dismiss the claim only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 46-47 (1957).

The Court cannot say, at least at the current stage of the proceedings, that no reasonable fact finder could determine that plaintiffs' lawsuit involved a matter of public concern. The relevant pleading is plaintiffs' original complaint, for the retaliation allegedly occurred in response to the filing of that complaint. There is no question that in that complaint, CUI, Loera and Massarella complained of conduct that they claim harmed them directly – as plaintiffs necessarily do when they file a lawsuit. But the fact that plaintiffs' personal interests were involved in a petition for redress is not dispositive of the "public concern" issue. If it were, the ability to bring suit for retaliation arising from the exercise of First Amendment rights would be a dead letter, for no plaintiff bothers to file a suit unless his own interests are somehow at stake. Instead, the issue is whether the matters the plaintiff asserted while exercising his First Amendment rights are *also* a matter of public concern. As defendants themselves put it, to be protected, a lawsuit "should seek to advance political or other ideas of public importance and seek to correct unlawful practices or bring them to the public's attention." Defs.' Amended Mem. at 7 (citing *Carreon v. Illinois Dep't of Human Svcs.,* 395 F.3d 786, 793 (7th Cir. 2005)).

The complaint, read liberally, alleges that the City's contracting and debarment process

9

was manipulated by City officials, to the detriment of taxpayers. Plaintiffs sought (and still seek) an injunction preventing the City from cutting them off from doing business with the City and its contractors. If granted, such an injunction would redound to the benefit not just of plaintiffs, but of the City's taxpayers, who otherwise might be deprived of the ability to obtain goods and services from the lowest responsible bidder. Thus characterized, the suit does not merely involve a private grievance unworthy of First Amendment protection.

For this reason, the Court denies defendants' renewed request to dismiss Count 3.[1]

**2. Claims against Dempsey**

Dempsey is entitled to absolute immunity on plaintiffs' § 1983 claims for damages to the extent they arise from acts that she performed that were, from a functional standpoint, prosecutorial or quasi-judicial in nature. A government official is absolutely immune from suits for damages under § 1983 for conduct in the initiation of civil proceedings to the extent the claim against her is premised on acts she took in an enforcement role analogous to the role of a prosecutor who initiates criminal proceedings. *See Butz v. Economou,* 438 U.S. 478, 515-16 (1978); *Smith v. Power,* 346 F.3d 740, 742 (7th Cir. 2003). This immunity applies even if the prosecutor acted maliciously or on the basis of false evidence. *Smith,* 346 F.3d at 742. Dempsey's acts in initiating the debarment and decertification proceedings fall within the scope

---

[1] Defendants have made a qualified immunity argument regarding Count 3, but it addresses only the theory of liability that the Court has, at this point, withdrawn – specifically, the contention that plaintiffs' claim is not subject to the "public concern" test. Defendants argued that the law in that regard was not sufficiently established to make liability for damages appropriate. *See* Defs.' Amended Mem. at 8. Because the Court has not premised its denial of the motion to dismiss on that point, defendants' qualified immunity argument is effectively moot. Defendants did not argue that they are entitled to qualified immunity if the Court determines that the complaint sufficiently alleged that plaintiffs' lawsuit involved a matter of public concern.

of absolute prosecutorial immunity to the extent they form the basis of plaintiffs' claims for damages against her.

In addition, an adjudicative officer in a governmental administrative agency is entitled to the same absolute immunity as a judge to the extent she acts in an adjudicative capacity. *Butz,* 438 U.S. at 512-13; *Killinger v. Johnson,* 389 F.3d 765, 770 (7th Cir. 2004) (according absolute immunity to a municipal commissioner who suspended a liquor license). As plaintiffs allege, Dempsey's role in determining whether to debar plaintiffs was based on her consideration of evidence regarding their continued eligibility to do business with the City. This is the type of activity that is protected by absolute judicial immunity. *Killinger,* 389 F.3d at 770.

Plaintiffs argue that Dempsey is not entitled to absolute immunity because she made her decision without giving plaintiffs due process of law. That misses the point. Judicial immunity from a claim for damages disappears only if the judicial officer acted in clear absence of jurisdiction. *See Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). There is no question that Dempsey, as the City's purchasing agent, had the jurisdiction to determine who could and could not contract with the City. *See* 65 ILCS 5/8-10-14 & 8-10-16(d). Plaintiffs' contentions that Dempsey denied them due process in her adjudicative actions and that she exceeded her legal authority are insufficient to defeat her claim of absolute immunity. *See, e.g., Brokaw v. Mercer County,* 235 F.3d 1000, 1015 (7th Cir. 2000).

Absolute immunity does not apply, however, to plaintiffs' claims in Count 4 for prospective injunctive relief and for attorney's fees under 42 U.S.C. § 1988 if they prevail on their injunctive relief claim. *See, e.g., Pulliam v. Allen,* 466 U.S. 522, 541-42, 544 (1984). For this reason, the Court declines to dismiss Dempsey from Count 4 of the second amended

11

complaint, in which plaintiffs seek only injunctive relief.[2]

In addition, Dempsey is not entitled to absolute immunity with regard to plaintiffs' damages claims to the extent they arise from her alleged participation in making statements about plaintiffs to the media, as such conduct is neither prosecutorial nor judicial in nature. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 278 (1993). The Court disagrees with Dempsey's argument that the complaint does not sufficiently put her on notice of what she is claimed to have done in this regard. *See* 2d Am. Compl. ¶¶ 44, 100(i), 102. The Federal Rules of Civil Procedure do not require particularized pleading of § 1983 claims of this type beyond what plaintiffs have already provided.

In sum, Counts 1, 2, and 3 of the second amended complaint are dismissed as to Dempsey to the extent plaintiffs seek damages premised upon her actions in instituting and determining the debarment and decertification matters but otherwise remain viable claims against her. Dempsey is likewise not entitled to dismissal of Count 4, in which plaintiffs seek only prospective injunctive relief.

**3.     Claims against Langone**

Langone argues that he cannot be held liable for the alleged denial of Loera and Massarella's due process rights because he is not alleged to have participated in giving the allegedly defective notice or in the determination of what type of process to provide to plaintiffs. That argument is correct as far as it goes, but it is insufficient to completely defeat plaintiffs' due process claims against Langone; plaintiffs unequivocally allege that Langone made false

---

[2] It is unclear whether plaintiffs could obtain an injunction against Dempsey, who evidently is no longer the City's Chief Procurement Officer. That, however, is an issue for another day.

statements that served in significant part as the basis for the debarment and decertification.

Langone argues that he is entitled to absolute immunity for giving false testimony. A witness is absolutely immune from a suit for damages under § 1983 for giving false testimony. *Briscoe v. LaHue,* 460 U.S. 325, 334, 342-43 (1983). It is equally clear, however, that a person who serves as the "complaining witness" is entitled only to qualified immunity, not absolute immunity. *Malley v. Briggs,* 475 U.S. 335, 340-41 (1986). In determining immunity issues on a motion to dismiss, the Court must accept the complaint's allegations as true. *See Kalina v. Fletcher,* 522 U.S. 118, 122 (1997); *Buckley,* 509 U.S. at 261. The second amended complaint sufficiently alleges that Langone was the instigating force behind the debarment proceedings and thus (given the liberal standards that apply to federal complaints on motions to dismiss) could qualify as a complaining witness entitled only to qualified immunity.

Langone makes no argument as to why or how he would be entitled to qualified immunity were it to be found that he had fabricated evidence and given false testimony in the role as complaining witness in the debarment proceedings. Nor could he. It is well established that "[q]ualified immunity is dissolved . . . when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago,* 242 F.3d 737, 742 (7th Cir. 2001). No viable argument could be made that a reasonable person in Langone's position would believe that making false statements to obtain debarment of a person affiliated with a government contractor does not violate that person's constitutional rights.

**4.  Breach of contract claim**

In Count 5, CUI asserts state law claims for breach of some forty-six contracts with the

City that it claims were improperly terminated as a result of the debarment. The City has moved to dismiss Count 5 with regard to forty-four of these contracts. It argues that one of the contracts had expired before the debarment, two never existed, and forty-one had provisions permitting early termination by the City.

In its response to the City's motion, CUI says that it its claim is not premised on the two contracts that were never executed. It also argues that the contract that the City contends expired had not, in fact, expired. *See* Pls.' Amended Br. at 3. In its reply, the City appears to contend that forty-one contracts were properly terminated and that the other two that it says existed cannot be challenged in court due to exhaustion-of-remedies requirements contained in the contracts. *See* Defs.' Reply, Ex. 4. The Court will confine its discussion to these forty-three contracts.

To state a claim for breach of contract under Illinois law, a plaintiff must allege that it had an enforceable contract on which it performed and which the defendant breached, resulting in damage to the plaintiff. *See, e.g., United States v. Cancer Treatment Ctrs. of Amer.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004). In their response to the motion to dismiss, CUI makes it clear that its claim is premised primarily on the absence of written notice of termination. *See* Pls.' Amended Br. at 3-4.

The City does not appear to dispute CUI's argument that noncompliance with the contracts' written notice requirement would provide a proper basis for a breach of contract claim for improper termination. It argues, however, that CUI has conceded that it received written notice of termination. Specifically, CUI alleges that on August 24, 2005, it received the City's debarment notice, which said that CUI's business with the City was terminated, effective

14

immediately. *See* 2d Am. Compl. ¶ 61.

To the extent that CUI's claim is premised upon a theory of breach based on the failure to provide written notice of termination at the time of the debarment, it cannot maintain the claim. The fact that this notice did not specifically invoke the contracts' early termination provision is of no consequence. The contracts did not require written notice of termination to be made in any particular form, and none of the contracts limited the grounds on which the City could terminate. *See L.A.P.D., Inc. v. General Elec. Corp.,* 132 F.3d 432, 404 (7th Cir. 1997) (if contract allows any reason, or none, as a basis for termination, the terminating party need not reveal its reasons for termination).

CUI also appears to claim, however, that the City effectively terminated the contracts earlier, when Dempsey allegedly directed City departments not to honor any contracts with CUI during the pendency of the debarment. *See* Pls.' Amended Br. at 4. CUI thus alleges, in effect, termination without any written notice at all. It may proceed with Count 5 to the extent it is premised upon this theory. In this regard, the Court rejects, as essentially circular, the City's contention that this is not a termination claim but rather a claim of deficient performance that is subject to the contractual exhaustion of remedies requirement. And even if the claim were subject to that requirement, CUI has asserted that exhaustion would have been futile, a contention that the Court cannot appropriately decide on a Rule 12(b)(6) motion.

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss in part and denies it in part [docket no. 125]. Counts 1, 2, and 3 of the second amended complaint are dismissed as to defendant Dempsey to the extent plaintiffs seek damages premised upon her

actions in instituting and determining the debarment and decertification matters. Count 5 is dismissed to the extent it is premised upon a theory of breach of contract based on the failure to provide written notice of termination at the time of the debarment. Defendants' motion is otherwise denied. Defendants are directed to answer all remaining claims by no later than April 24, 2007. The Court is set for a status hearing on April 17, 2007 at 9:30 a.m.

                                                                                                    MATTHEW F. KENNELLY
                                                                                                     United States District Judge

Date:   April 10, 2007