**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHICAGO UNITED INDUSTRIES, LTD.,** ) | |
| **GEORGE LOERA, and NICK MASSARELLA,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 05 C 5011** |
| ) | |
| **CITY OF CHICAGO, MARY DEMPSEY,** ) | |
| **and LOUIS LANGONE,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The City of Chicago, Mary Dempsey, the city's former interim chief procurement officer, and Louis Langone, the director of administration of the City's Department of Transportation, have moved the Court to grant summary judgment against plaintiffs George Loera and Nick Massarella on three of the six counts contained in plaintiffs' revised third amended complaint. For the reasons stated below, the Court grants defendants' motion.

**Background**

The plaintiffs' claims arise from the City's debarment of Chicago United Industries ("CUI"), Loera, and Massarella in August 2005 from doing business with the City of Chicago. Prior to the debarment, CUI had been awarded contracts to provide City departments with stop signs, traffic control signals, fire extinguisher boxes, emergency telecommunications equipment, and other items. Allegedly as a result of the debarment, the City terminated or stopped performing on over forty contracts that CUI had with the City, whose value, CUI alleges, was

around $12 million.  The debarment also had the effect, plaintiffs contend, of preventing them from doing business with other firms that had City contracts.  The plaintiffs allege that the debarment and termination violated Loera and Massarella's rights to due process, as Loera and Massarella were never notified that the City was considering debarring them personally, and that the procedure the City used allegedly was a sham.  The plaintiffs also allege that during the debarment proceedings, the City and its representatives made false and defamatory statements about CUI, Loera, and Massarella to the press, City departments, and companies with which CUI does business.  They also allege that the defendants later retaliated against them for filing suit to challenge the debarment.

The plaintiffs filed this suit shortly after the debarment took place.  They obtained a temporary restraining order from the judge of this Court to whom the case was then assigned.  The order was reversed on appeal after the Court of Appeals concluded that it amounted to an appealable preliminary injunction due to its duration and then found that the claim for injunctive relief had been rendered moot by the City's later reinstatement of the cancelled contracts, rescission of the debarment order, and amendment of debarment rules to provide for additional process in advance of debarment.  *See Chicago United Inds., Ltd. v. City of Chicago,* 445 F.3d 940 (7th Cir. 2006).  The court vacated the injunction but remanded the case for consideration of any claims for damages.

The plaintiffs filed an amended complaint following remand.  They alleged that the City had retaliated against CUI for filing suit by threatening to reinstate debarment proceedings, cancelling contracts, refusing to accept CUI as the low bidder on various contracts, failing to advise City departments and outside vendors that CUI was again eligible to do business with the

City, and making defamatory statements about CUI, Loera, and Massarella. They asserted claims for damages on behalf of all three plaintiffs for violation of their procedural and substantive due process rights and for retaliation for exercising their First Amendment rights; a claim for an injunction against further debarment proceedings; and a state law defamation claim. In December 2006, this Court dismissed CUI's due process claims and all three plaintiffs' state law claims. The Court declined to dismiss the due process claims of Loera and Massarella and the First Amendment retaliation claims of the three plaintiffs.

Following the December 2006 ruling, plaintiffs filed a second amended complaint adding Dempsey, the City's interim chief procurement officer, as a defendant. In April 2007, the Court granted in part and denied in part another motion to dismiss filed by defendants. The Court dismissed Counts 1, 2, and 3 of that complaint (which alleged procedural and substantive due process violations as to Loera and Massarella and retaliation claims under § 1983 as to all three plaintiffs) with regard to defendant Dempsey to the extent plaintiffs sought damages resulting from her handling of the debarment and minority business enterprise decertification proceedings in a prosecutorial or quasi-judicial capacity. The Court also dismissed a breach of contract claim brought for the first time in the second amended complaint to the extent the claim was premised on defendants' failure to provide written notice of termination of the contracts at the time of CUI's debarment. The Court otherwise denied defendants' motion to dismiss. This decision allowed Loera and Massarella's claims of substantive and procedural due process violations (except where they ran up against Dempsey's immunity); plaintiffs' claims of retaliation; and the breach of contract claim (to the extent it rested on the theory that defendants had effectively terminated the contracts *before* they gave formal notice of the plaintiffs' debarment) to survive.

In August 2007, plaintiffs filed a third amended complaint. The Court will describe the allegations contained in the third amended complaint in some detail because they are the most current (not because they have changed significantly since the last iteration of plaintiffs' initial pleading—they have not).

In their revised third amended complaint, plaintiffs allege that CUI, a minority business enterprise and a supplier of goods, has been doing business with the City, the City's primary contractors, and other governmental agencies in northern Illinois for approximately twenty years. They allege that on an unspecified date, CUI was awarded a contract by the City with a total value of $1,530,000 to provide more than 300,000 sign blanks to the City's Department of Transportation (DOT). Pursuant to that contract, DOT placed an order for either 12,000 or 24,000 signs (plaintiffs' revised third amended complaint uses both numbers at different points), which CUI delivered in January 2005.

Shortly thereafter, Louis Langone, DOT's director of administration, claimed that CUI had shorted the City by 222 blanks, saying he had counted the blanks by hand. Massarella allegedly visited the DOT's sign shop and saw that the blanks were still shrink-wrapped; he believed that Langone could not possibly have counted the blanks and had made a false allegation against CUI as an excuse to avoid or delay payment. CUI then provided the City with documentation that the requested number of sign blanks had been delivered, and it requested payment. CUI was then told to deal only with the City's Department of Procurement Services ("DPS") and its attorneys. According to plaintiffs, CUI was eventually paid for all but 222 sign blanks.

On March 31, 2005, plaintiffs allege, the City issued a notice of intent to debar CUI. In

that notice, the City alleged that CUI had submitted a false shipping ticket to DOT regarding the delivery of the sign blanks and had tried to collect $2,400 that it knew was not owed. According to plaintiffs, the notice did not state or suggest that the City was considering debarring Loera or Massarella personally. Plaintiffs also allege that at the time the City issued the notice, it also issued press releases falsely claiming that CUI was dishonest and had committed a fraud on the City.

Plaintiffs allege that on April 29, 2005, CUI submitted a written response to the notice of intent to debar, including a sworn affidavit from the manufacturer of the sign blanks stating that any shortage was the result of his own error and that CUI and its representatives were unaware of the error.

Plaintiffs allege that four months then passed, during which DOT and the City did not respond to plaintiffs' requests for meetings or a hearing regarding the allegations in the notice. Plaintiffs also allege that during this time, DPS directed other City departments not to honor their contracts with CUI or do business with CUI and advised other contractors to do the same, even though this allegedly violated the City's debarment procedures. As a result, plaintiffs allege, manufacturers and suppliers under contract with CUI terminated their relationships with the company. (Plaintiffs also now allege that the City, "contrary to its own long-standing business practices," allowed at least nine contracts it had with CUI to lapse between February and July of 2005.) Plaintiffs say that they repeatedly protested these actions by the City and requested a hearing and meetings with DPS and Dempsey but were ignored.

Plaintiffs allege that on August 24, 2005, the City debarred all three plaintiffs based on findings of fact that were based on false evidence supplied by Langone and summaries of witness

interviews that falsely reported the statements of the witnesses. The debarment occurred, plaintiffs contend, without any opportunity to rebut the evidence against them and without findings by an impartial finder of fact. As a result of the debarment, the City's business with CUI was terminated, and all payments due to CUI were placed on hold.

Plaintiffs also allege that on March 17, 2005, the City gave CUI a notice of intent to decertify it as a minority business enterprise on the ground that it was ineligible for such a certification. The notice made no reference to the allegations of dishonesty or the sign blank contract. In April 2005, CUI responded in writing to the notice of intent to decertify. On August 24, 2005, the same day plaintiffs were formally debarred, CUI received notice of a hearing before DPS, to occur a week later. Plaintiffs allege that the notice did not mention the original notice of intent to decertify CUI as a minority business enterprise but rather referred only to the debarment of CUI. Plaintiffs allege that upon inquiry, CUI was advised that the decision on the decertification would be made by the same person or persons who had conducted the debarment proceedings.

The plaintiffs then filed this lawsuit and moved for a temporary restraining order. As noted earlier, the judge to whom the case was then assigned issued a temporary restraining order in which he enjoined the City from enforcing the debarment of the plaintiffs, canceling any existing contracts with CUI, and conducting any further proceedings on the decertification. The TRO was later extended and was modified to prevent the City from doing an end run around CUI's existing contracts by procuring from other entities the materials covered by those contracts.

Plaintiffs allege that after the filing of this suit and the entry of the temporary restraining

order, the City retaliated against plaintiffs by threatening to institute new debarment proceedings; failing to inform City departments and vendors that CUI was again eligible to do business with the City; canceling existing contracts; refusing to award other contracts to CUI even though it was the low bidder; offering other City contractors unspecified "incentives" not to do business with CUI; and taking various other actions. As a result, plaintiffs allege, certain vendors declined to do business with plaintiffs. CUI also alleges that in further retaliation, the City refused to act on CUI's request for recertification as a minority business enterprise and charged Massarella with violating a City ordinance imposing civil penalties for making false claims (a charge that the City later dropped).

The revised third amended complaint includes five claims. Counts 1 and 2 are claims by Loera and Massarella for violations of their procedural and substantive due process rights, respectively; Count 3 is a procedural due process claim by CUI against the City and Dempsey only; Count 4 is a retaliation claim by all plaintiffs; Count 5 is a claim for injunctive relief based on plaintiffs' constitutional claims; and Count 6 is a state law claim by CUI only (as plaintiffs have conceded in the course of briefing the present motion) against the City for breach of some forty contracts.

All three defendants have moved for summary judgment against plaintiffs Loera and Massarella on Counts 1, 2, and 4 of plaintiffs' revised third amended complaint. Defendants also assert that Count 5 does not establish a distinct claim and that it is "purely remedial."

## Discussion

### 1. Legal standard

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## 2. Loera and Massarella's procedural due process claims

"[T]he requirements of procedural due process apply only to deprivations of interests included within the fourteenth amendment's protection of property and liberty." *Munson v. Friske*, 754 F.2d 683, 691 (7th Cir. 1985) (citing *Bd. of Regents of State Colleges v. Roth*, 408 US. 564, 569 (1972)). Thus, the first step a court must take in due process analysis is to "look to the nature of the interest at issue to see if it is encompassed" by the fourteenth amendment's terms. *Id*. "Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (*citing Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).

An individual's occupational liberty interests may be implicated, such that the state actor must afford him due process, when he is fired "on publicly stated grounds that kill his chances for further employment in his chosen occupation." *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987). The reason is that by this action, the state actor "in effect excludes him from that occupation"—i.e., it forecloses any chance that the individual might have to find work in his chosen field in the future. *Id*. An occupational liberty interest is also implicated if the state actor, in ending the individual's employment, levels charges against him that risk serious damage

to his standing or association in the community, such as accusations of dishonesty, immorality, or alcoholism. *Roth*, 408 U.S. at 573. This is the second branch of the so-called "*Roth* liberty test." *Larry v. Lawler*, 605 F.2d 954, 959 (7th Cir. 1978) (*quoting Adams v. Walker*, 492 F.2d 1003, 1008-09 (7th Cir. 1974)). The law in this Circuit continues to recognize these as distinct theories that a plaintiff may invoke to claim that his occupational liberty interests have been infringed. *E.g., Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001) (*quoting Munson*, 754 F.2d at 693) ("We have interpreted *Roth* to indicate that a liberty interest may be threatened in two types of situations . . . (1) the individual's good name, reputation, honor or integrity are at stake by charges such as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other [employment] opportunities."). Yet *Townsend* also clarifies that the requirement that the public charges make it "unlikely that anyone will hire [the plaintiff] for a comparable job in the future" applies to both theories. *Id*. at 670 n.9 (*citing Colaizzi*, 812 F.2d at 307). "[B]ecause the interest protected [in cases like this one is] occupational liberty rather than liberty of reputation," harm to the individual's reputation from charges of dishonesty and the like that the state actor levels in connection with firing (or, as in this case, declining to continue contracting with) the individual are not enough to sustain a due process claim. *Id*.; *cf. Paul v. Davis*, 424 U.S. 693, 708-10 (1976) (holding that defamation by public officials, without more, does not deprive the defamed individual of liberty or property for due process purposes).

Defendants argue that the Court should enter summary judgment in their favor on Loera and Massarella's procedural due process claims because there is no factual dispute that both men continue to work in their chosen field—namely operating CUI, a company "in the industry of

supplying goods" and, in Massarella's case, consulting on the side.  Defs.' Br. at 5.  In terms of the analytical steps laid out above, defendant's position is that although Loera and Massarella have identified a liberty interest that is protected by the fourteenth amendment's due process clause, neither can show any deprivation of that interest in the form of lost employment opportunities.

Defendants also put forward several variants of this argument, mostly in response to Loera and Massarella's arguments that there is a genuine factual dispute about this decidedly material issue.  For example, defendants argue that Loera and Massarella's claims about financial distress CUI apparently experienced in 2006 "do not overcome the uncontested facts that the chosen professions of Loera and Massarella were running a supply company, CUI, and that they have never been barred from these professions."  Defs.' Repl. at 4-5.  Defendants also object to what they see as Loera and Massarella's attempt to "recast" their chosen profession narrowly as doing business with the City of Chicago—obviously to fit the facts of the case, because the debarment formally prevented them from doing so while it was in effect.  *Id*. at 7-8.  Defendants further object to Loera and Massarella's attempt to "wrap themselves in the corporation" to avoid the problem that neither was individually prevented from engaging in his chosen trade of running a supply company.  *Id*. at 8.

In addition to the arguments to which defendants' counterarguments have already been described, Loera and Massarella resist application of the "virtually unemployable" standard—i.e., the rule that no deprivation of an occupational liberty interest occurs unless job opportunities are broadly foreclosed to the plaintiff—on the ground that their case does not involve an employment or wrongful termination dispute.

Loera and Massarella's procedural due process claim thus turns on the precise contours of occupational liberty interests and, more precisely, on what form deprivation of these interests must take to be actionable. At the outset, the Court can dispose of Loera and Massarella's argument that some special standard applies in this case because the claimed deprivation of occupational liberty interests does not arise from an employment relationship. The argument does not stand up to scrutiny. The Seventh Circuit has applied the "virtually unemployable" standard to procedural due process claims that involve public contracts. *See RJB Props. v. Bd. of Educ. of the City of Chicago*, 468 F.3d 1005, 1011 (7th Cir. 2006). Other circuits do likewise. In *Trifax Corp. v. District of Columbia*, 314 F.3d 641 (D.C. Cir. 2003), a case cited by Loera and Massarella, the D.C. Circuit held that a public contractor whose performance was criticized in an audit report later detailed in the *Washington Post* could not show a deprivation of its occupational liberty because it continued to bid successfully on new contracts. *Id*. at 644-45. This continued activity meant that the contractor could not show "broad preclusion" from operating in its chosen line of business, as is required to show deprivation of an occupational liberty interest. *Id*. (citing *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497 (D.C. Cir. 1995)).

The *Trifax* court's reasoning indicates that the law places no special weight on the relationship between the plaintiff and the particular state actor whose conduct allegedly deprived him of a liberty interest. Thus, Loera and Massarella's contention that they lost the business of what was apparently their largest customer does not amount to the necessary deprivation; terms like "broad preclusion" and "chosen occupation" are not customer-specific. Moreover, although the term "unemployable" may not be precisely accurate to describe a contractor whose chances of bidding successfully on future contracts are effectively destroyed, this is a terminological

11

distinction without a legal difference. To avoid entry of summary judgment for defendants on their procedural due process claim, Loera and Massarella must show that there is a factual issue as to whether they were effectively foreclosed from pursuing their chosen line of work by defendant's actions.

As is evident from the Court's discussion so far, no liberty interest is implicated when the charges leveled by the state actor in connection with the adverse action "merely result in reduced economic returns and diminished prestige, but not permanent exclusion from or protracted interruption of employment." *Munson*, 754 F.2d at 693. It follows that no claim for deprivation of occupational liberty can be made if the individual continues to work in the same field after the conduct he challenges has occurred. *See Townsend*, 256 F.3d at 666-70. In *Townsend*, a pool lifeguard who had been employed by a Chicago public school brought a § 1983 suit over his dismissal (without a hearing) after the drowning of a student. *Id*. A school administrator's comments criticizing the life guard, Riley, for "fail[ing] to perform duties" to protect the student from drowning were published in the *Chicago Sun-Times*. *Id*. at 666. The Seventh Circuit affirmed the district court's grant of summary judgment in favor of the defendant school district on the lifeguard's procedural due process claim. *Id*. at 670. It found that because Riley had also been employed continuously as a swimming instructor for the City Colleges of Chicago—up through the time of the appeals court's ruling—he could not show he suffered "a tangible loss of other employment opportunities." *Id*.

The uncontested facts on summary judgment demonstrate that Loera and Massarella continue to be employed by CUI, their corporation, whose business is supplying goods under contract to various public and private entities. They have not been permanently excluded from

their field, nor has their economic activity in that field been interrupted for a protracted period. Any financial distress CUI has experienced since the debarment has no bearing on this question, except to the extent it would be caused by Loera and Massarella's being broadly precluded from working in the supply-contract field, which has not occurred.

Finally, even if Loera and Massarella are able to "wrap themselves in the corporation" to avoid the problem that neither was individually prevented from engaging in his chosen trade of running a supply company, such a move cannot succeed because CUI remains a going concern still active in its industry. For these reasons, the Court grants summary judgment for defendants on Loera and Massarella's procedural due process claims.

Before moving on, the Court notes its disapproval of defendants' attack on the affadavits submitted by Loera and Massarella in connection with this motion as "conclusory," "self-serving," and "uncorroborated." To give just one example, defendants quote a passage from Massarella's affidavit dealing with the financial consequences of the debarment for CUI and him and then say that "[n]one of this is supported by any documentary or other supporting evidence of any kind. There are no financial statements, no letters of credit, no income tax returns, no ledger entries, or anything else that supports that CUI had to draw on a line of credit (let alone that there was in fact a line of credit) or that either Loera or Massarella was personally liable for the debt." Defs.' Repl. Br. at 4.

Defendants have prevailed by showing that the facts to which Loera and Massarella attest regarding CUI's and their own financial troubles are not material because they fail to show that Loera or Massarella has been precluded from working in his chosen profession. Their attack on the affidavits, however, misapprehends the law. There is no requirement that affidavits be

corroborated.  Federal Rule of Civil Procedure 56(e) provides that the adverse party to a motion

for summary judgment "may serve opposing affidavits" and does not require corroboration of

these affidavits—only that affidavits by either side be based on personal knowledge.  Defendants

do not argue that Loera or Massarella lacks personal knowledge of CUI's or their own financial

straits.  The Seventh Circuit has "routinely found that a nonmoving party's own affidavit can

constitute affirmative evidence to defeat a summary judgment motion."  *Payne v. Pauley*, 337

F.3d 767, 771 (7th Cir. 2003) (collecting cases).[1]  In *Payne*, the Seventh Circuit clarified that,

"[p]rovided that the evidence meets the usual requirements for evidence presented on summary

judgment—including the requirements that it be based on personal knowledge and that it set

forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an

acceptable method for a non-moving party to present evidence of disputed material facts."  *Id.* at

773.  *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496 (7th Cir. 2004), which defendants cite, is

consistent with this point.  The Seventh Circuit in *Buie* held that "a self-serving affidavit

supported by facts in the record could defeat summary judgment.  The record, moreover, may

include the self-serving affidavit itself, provided that the affidavit meets the usual requirements

for evidence on summary judgment—including the requirements that it be based on personal

knowledge and that it set forth specific facts showing that there was a genuine issue for trial."  *Id.*

---

[1] The court in *Payne* faced a situation similar to the one in this case.  Defendant in *Payne*
"point[ed] to a number of cases from this Circuit for the proposition that self-serving,
uncorroborated, and conclusory statements in testimony are insufficient to defeat a motion for
summary judgment."  *Payne*, 337 F.3d at 772.  The problem in the cases cited by defendant was
not that the affidavits were self-serving; "[a]fter all, most affidavits submitted [in response to
summary judgment motions] are self-serving."  *Id.*  Rather, it was that the affidavits were not
based on personal knowledge (for example, because they were speculative) or failed to set out
sufficiently specific facts showing a triable issue, as required by Rule 56(e).  *Id.* at 772-73.

at 504 (citations and internal quotation marks omitted). The Court has already noted that defendants have prevailed on the last element of the *Payne* court's statement of the rule—namely, the materiality of the facts placed in dispute by the self-serving affidavit. There was no need for them to further attack the individual plaintiffs' affidavits based on an erroneous understanding of the law.

**3.      Substantive due process claim**

The Court can dispose more easily of Loera and Massarella's substantive due process claim. As defendants correctly note, it is well settled in this Circuit that a deprivation of occupational liberty cannot ground a substantive due process claim. *Zorzi v. County of Putnam*, 30 F.3d 885, 894-95 (7th Cir. 1994) (*citing Ill. Psych. Ass'n v. Falk*, 818 F.2d 1337, 1343-44 (7th Cir. 1987). To the extent that either Loera's or Massarella's substantive due process claim rests on a deprivation of an occupational liberty interest, it fails as a matter of law. In any event, the Court has already determined that neither Loera nor Massarella has been deprived of occupational liberty interest, so that even if an infringement of this interest could ground a substantive due process claim, their claims would fail.

Loera and Massarella nonetheless argue that some ambiguity on this point of Seventh Circuit law exists. They cite to decisions by the First and Ninth Circuits for the proposition that "arbitrary and irrational" deprivations of occupational liberty interests can ground a substantive due process claim. Pls.' Br. at 12. They assert that the Seventh Circuit has not "foreclose[d] such protection of liberty interests where the whole deprivation is by arbitrary government infringements." *Id.* Plaintiffs' idea is to suggest that the Court should resolve the question, which plaintiffs intimate is unsettled in this Circuit, in their favor in this case. Plaintiffs'

argument overlooks a key element of *Zorzi*'s holding, however. In that case, the Seventh Circuit clarified that, because "no abstract right to substantive due process exists under the Constitution," a claimant must show that some liberty or property interest was infringed in order to assert a substantive due process claim. *Zorzi*, 30 F.3d at 895. Even assuming that *Zorzi*'s rather clear language leaves room for a substantive due process claim rooted in deprivation of an occupational liberty interest if the deprivation is "arbitrary and capricious," the claimant must still show deprivation of such an interest as an initial step. The Court has already held that there is no genuine factual issue over whether Loera or Massarella can show such a deprivation—neither can. For this reason, defendants are entitled to summary judgment on Loera and Massarella's substantive due process claims.

**4.      Retaliation claim**

Defendants have also moved for summary judgment on Loera and Massarella's claims that defendants retaliated against them for filing this lawsuit. Because the Court regards plaintiffs' retaliation count as stating a claim under the petition clause of that amendment, the Court (belatedly) applied the "public concern" test of first-amendment case law in denying defendants' motion to dismiss this claim. In its last ruling, the Court determined that the second amended complaint, read liberally, "allege[d] that the City's contracting and debarment process was manipulated by City officials, to the detriment of taxpayers." This was a sufficient allegation of public concern to survive a motion to dismiss. This allegation has not changed in plaintiffs' revised third amended complaint.

Rather than argue the "public concern" point further, defendants now question whether Loera and Massarella have a claim as individuals for retaliation and, relatedly, their standing to

assert the claim. Loera and Massarella appear to make two distinct arguments on this point: first, that a question of fact exists as to whether defendants retaliated against them as individuals (and not just through CUI by taking allegedly retaliatory steps adverse to CUI's business interests); and second, that they have suffered "individual direct injury from the retaliation" against CUI "separate from their corporate losses and duties." Pls.' Resp. at 13.

The first of these contentions fails because it conflates the debarment, which named CUI and Loera and Massarella personally, with the alleged retaliation, which plaintiffs' own third amended complaint alleges was directly exclusively at CUI. See Pls.' Revd. Third Amd. Compl. ¶ 96(a)–(t). Loera and Massarella's argument that a genuine question of fact exists on the question of retaliation directed at them personally reduces to claims about harm to their business relationships, reputations, and (in Loera's case) physical health allegedly caused by the debarment. Loera and Massarella fail to allege any retaliation against them personally, let alone point to evidence supporting the existence of a triable issue on this point.

Next, Loera and Massarella argue they have suffered retaliation "separate from their corporate losses and duties" in relation to CUI. The Court understands this as an attempt by Loera and Massarella to fit their case within an exception to shareholder-standing rules. Typically, shareholders in a corporation cannot bring claims for injury to the corporation itself. *Hammes v. AAMCO Transmissions Inc.*, 33 F.3d 774, 777 (7th Cir. 1994) (citing *Singletary v. Cont'l Ill. Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1240 (7th Cir. 1993)) ("Shareholders do not have standing to sue for harms to the corporation, even for the derivative harm to themselves that might arise from a tort or other wrong to the corporation."). This rule applies even when, as in this case, the corporation has only a small number of shareholders or is a single-shareholder

entity. *See Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1383 (7th Cir. 2000). In *Kush*, the Seventh Circuit pointed out that denying standing to a sole shareholder to sue for harms to the corporation, although seemingly "harsh, or, at least, counterintuitive," is justified because the sole shareholder elects to use the corporate form. *Id.* "The form [provides] several advantages over operations as an unincorporated sole proprietorship, not the least of which was limitation of liability. In return, [the shareholder gives] up several prerogatives, including that of direct legal action to redress an injury to him as primary stockholder in the business." *Id.* at 1384. The rule also applies even when the sole shareholders are also the guarantors of the corporation's financial obligations to an outside creditor, as Loera and Massarella say they are in relation to CUI. *See Mid-State Fertilizer Co. v. Exchg. Nat'l Bank of Chicago*, 877 F.2d 1333 (7th Cir. 1989).

Narrow exceptions to this general rule of no shareholder standing exist. Loera and Massarella appear to argue that they should have standing because they have suffered direct injury independent of any duty owed to the corporation. Loera and Massarella do not, however, point to any evidence that would create a genuine issue for trial on this point. Because the Court has already determined that defendants did not engage in retaliation directly against Loera or Massarella, it follows that they have no direct claim. Instead, Loera and Massarella's retaliation claim is derivative of CUI's. This distinction between direct and derivative suits "reflects . . . the practical assessment that [in the latter case] the misconduct's initial impact is on the corporation itself, with any stockholder harm being consequential to that impact." II James D. Cox & Thomas Lee Hazen, *Cox & Hazen on Corporations* § 1503, at 896 (2d ed. 2003). Loera and Massarella have failed to provide evidence from which a finding reasonably could be made that there is a factual question of direct harm to them that was not a consequence of alleged retaliation

against CUI. For this reason, defendants are entitled to summary judgment on Loera and Massarella's retaliation claims.

**5.      Injunctive relief**

Defendants correctly point out that Count 5 of plaintiffs' revised third amended complaint is not a separate cause of action because it seeks only a form of relief, specifically, an injunction. The Court need not address this claim separately, as it remains viable only to the extent some underlying claim on which injunctive relief maybe appropriate remains in the case.

**6.      Counts 3 and 6**

Both sides appear to agree that CUI alone has asserted claims under Counts 3 (for violation of procedural due process rights against the City and Dempsey) and 6 (for breach of contract) of plaintiffs' complaint. Because defendants' present motion for summary judgment concerns only Loera and Massarella, the Court need not address these claims.

**Conclusion**

For the reasons stated above, the Court grants defendants' motion for summary judgment against Loera and Massarella [docket no. 180].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:    December 3, 2007